STATE of Missouri, Respondent,

v.

Dennis FULSOM, Appellant.

No. KCD 27733.

Missouri Court of Appeals,
Kansas City District.

. Feb. 9, 1976.

Motion for Rehearing and/or Transfer
Denied March 3, 1976.

Thomas M. Larson, Public Defender, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, P. J., and WELBORN and HIGGINS, Special Judges.

TURNAGE, Presiding Judge.

Defendant was charged with murder in the first degree under Section 559.010, RSMo 1969. The State submitted the case to the jury under murder committed in connection with an attempt to rob under the same Section. By this appeal defendant seeks to have his sentence of life imprisonment set aside.

Defendant relies on two grounds; (1) there was no evidence to show he was attempting to commit a robbery, and (2) the evidence was insufficient to sustain his conviction because of conflicts in the State's evidence. Neither ground avails defendant the relief he seeks.

Defendant was convicted of killing Claude Green in a neighborhood grocery store operated by Mr. Green. Lee LeMay, a thirteen year old boy employed by Mr. Green, who was in the store at the time, testified he saw the defendant enter Mr. Green's store and draw a gun and point the same at Mr. Green. Lee then became frightened and hid and the next thing he heard was about three shots being fired. The defendant thereupon ran from the store. Lee, on emerging from his hiding place, found Mr. Green's body.

Mary Jo Mitchum was a friend of the defendant. She testified a few days after the murder she talked with the defendant. He told her he had gone into the store and asked for a pack of Kools and drew a gun on the storekeeper. When the storekeeper discovered the defendant pointing a gun at him, the storekeeper drew his gun and shot the defendant in the hand. Thereupon the defendant said he had no choice but to kill Green. When Mary Jo asked the defendant if he obtained any money, the defendant stated he got scared and ran.

■ Defendant first contends the evidence failed to show any attempt to rob because there was no evidence the defendant announced a holdup, or demanded any money or property, and defendant did not actually take any money or property. In

making this contention defendant relies on *State v. Conway*, 351 Mo. 126, 171 S.W.2d 677 (1943). In *Conway* a filling station attendant was found dead and through fingerprints and possession of a gun shown to have been the murder weapon, it was established that Conway and his companion had been in the filing station. There was no evidence as to what occurred in the station and there was no evidence that any money or property had been taken from the station. Furthermore, when defendant and his companion were arrested shortly thereafter, there was no property found which was shown to have come from the station.

The facts of this case are different from those in *Conway* because here the evidence showed defendant entered the grocery store and immediately pulled a gun on the proprietor who was standing next to his cash register.

The facts in this case are very similar to those in *State v. Bazadier*, 362 S.W.2d 603 (Mo.1962). In *Bazadier* the evidence was the defendant and others entered a store and immediately started scuffling with the people there. The defendant in that case pulled a gun and shot one of the persons in the store. Thereafter one of the men entering the store was killed and others, including the defendant, fled. The argument was advanced there was an absence of evidence showing an intent on the part of the intruders to rob. In disposing of this contention, the court stated at 362 S.W.2d 606 [6, 7]:

> "The manner of their entry and their immediate unprovoked assault on Mr. Mock and others present are circumstances inconsistent with an inference that they intended to purchase something, visit with those present, look at the merchandise or engage in any other lawful activity. Their conduct, however, is consistent with the reasonable inference that if Mr. Mock and the others had not taken up arms against them, either by violence to the person or by placing in fear they intended to take money or property belonging to Mr. Mock. In fact, that is the only possible reasonable inference which may be drawn from their conduct, and for that reason the circumstances are inconsistent with any reasonable theory of innocence. There was sufficient evidence to support a conviction of the offense charged and of which appellant was found guilty."

Likewise, in *State v. Norris*, 365 S.W.2d 501 (Mo.1963) the defendant was convicted of assault with intent to rob. The evidence there showed the defendant placed a knife at the neck of a taxi driver. No robbery was announced and no demand for money was made prior to the taxi driver driving next to a police car and jumping out. Nonetheless, the court held the evidence was sufficient to sustain a conviction of assault with intent to rob. The court there relied upon *State v. Simon*, 317 Mo. 336, 295 S.W. 1076 (1927). There the court quoted from *Simon* at 365 S.W.2d 503:

> " 'The record is entirely barren of proof of any words spoken by appellant which may be said to characterize his act as done with intent to rob rather than to commit some other felony.' Nevertheless, holding the evidence sufficient to sustain a conviction of assault with intent to rob with malice, we said: 'The weight of authority and indeed the dictates of common sense require us to hold in the case at bar that the intent in the mind of appellant at the time he made the assault upon Clark was a matter peculiarly within the province of the jury to determine from all the facts and circumstances in evidence, including the words spoken by appellant. The jury had the right to find from such evidence that appellant intended to rob Clark when he jumped out of his automobile and placed his pistol against Clark's body and commanded him to 'get into this car.' * * * In determining the intent of appellant, the jurors had the right to avail themselves of their own knowledge of the usual and ordinary happenings of life and to apply such knowledge to the particular facts and circumstances in evidence in the case at bar.

It was for the jurors to say whether such facts and circumstances, measured by their own knowledge and experience of the affairs of life, pointed to the intent of appellant in assaulting Clark as that of robbing him.' "

As in the above case, the evidence here that defendant entered the store and immediately pointed a gun at the proprietor was sufficient evidence for the jury to draw the inference that the intent of defendant was to commit a robbery and the pulling of the gun and pointing it at the storekeeper was an attempt to perpetrate this crime. As further pointed out by the above cases, the fact the defendant's purpose was not accomplished and he actually did not obtain any money or property does not mitigate against the circumstances shown and their sufficiency to enable the jury to draw the inference as to the defendant's intent.

It is common knowledge grocery stores keep a quantity of cash on hand representing receipts from sales and also for the purpose of making change for customers. The absence of any evidence to show any previous acquaintanceship between the defendant and Green which would show any other possible intent on the part of defendant in entering this store and immediately pulling a gun on Green, would constitute circumstances from which the jury was authorized to draw an inference that the defendant was attempting to rob Green at the time defendant killed him.

■ Defendant next contends the evidence was insufficient because of a difference between the testimony of LeMay and Mitchum as to whether or not defendant had a beard on the day of the murder. LeMay stated he only had a view of the right side of the defendant's face and he was not sure whether or not defendant had a full beard when he entered the store. Mitchum stated at one time he had a full beard at the time of the crime and also stated at another point he did not.

It is stated in *State v. Austin*, 496 S.W.2d 799 (Mo. banc 1973) at page 804[1], "the appellate court will not weigh evidence if the verdict was supported by substantial evidence. Defects and inconsistencies, if any, in the testimony of Officer Schultz when considered with all the evidence were for the jury to resolve and the jury could properly resolve such conflicts against defendant."

The answer to defendant's further contention that LeMay's identification of the defendant was faulty is also found in *Austin*. Defendant contends since LeMay only had a view of the right side of defendant's face, he could not identify defendant. However, LeMay identified a picture of defendant and identified defendant from a lineup and positively identified him at the trial. No contention is made that any of these identifications by LeMay were in any way suggestive or tainted.

Since the verdict was supported by substantial evidence, these conflicts in the testimony of the witnesses was for the jury to resolve and they properly did resolve such conflicts against the defendant.

Since there is no merit in the defendant's contentions, the judgment is affirmed.

All concur.