**STATE of Missouri, Respondent,**

v.

**Robert ELBERT, Appellant.**

**No. 56126.**

Supreme Court of Missouri,
Division No. 2.

Sept. 13, 1971.

Motion for Rehearing or to Transfer to
Court En Banc Denied
Oct. 11, 1971.

John C. Danforth, Atty. Gen., Richard L. Wieler, Asst. Atty. Gen., Jefferson City, for respondent.

Samuel A. Goldblatt, St. Louis, for appellant.

STOCKARD, Commissioner.

Appellant, Robert Elbert, was found guilty by a jury of robbery in the first degree by means of a dangerous and deadly weapon, and when the jury could not agree on the punishment it was assessed by the court at imprisonment for a term of ten years. We affirm.

Appellant does not challenge the sufficiency of the evidence, and a brief summary thereof is sufficient for the disposition of the issues on this appeal.

A jury reasonably could find from the evidence that shortly after noon on January 21, 1970, appellant and another person were admitted to an apartment building by John Robertson, the owner, who was 82 years of age. Appellant then produced a gun and struck Robertson. He was dragged to a room and tied with sheets, and appellant and his companion took $280 from his wallet, and also took a watch and a television set.

Appellant's first contention is that prejudicial error resulted when the trial court permitted the State's attorney, on cross-examination of appellant, to inquire concerning prior arrests.

During the opening statement by appellant's counsel he said this: "That at this particular time, he [appellant] was a boy with minor difficulties with the police department, nothing very serious of any nature that I know of or belief of [sic], and there is no allegation here pleaded by the State that he has been convicted of any prior crime of any kind." Appellant testified on his own behalf, and during direct examination the following occurred:

"Q. Now, Robert, you have been in trouble before, haven't you, with the police?

A. Yes, sir, I have, I got caught, couple fellows smoking marijuana.

Q. Smoking pot, as they call it?

A. Yes, sir.

Q. That's the only time you have ever been in trouble with the police that you can remember, is that correct?

A. Yes, sir."

Thereafter, over appellant's objection, the State was permitted to cross-examine

the defendant regarding prior arrests for peace disturbance, possession of marijuana, and gambling. During the examination appellant admitted that he had been taken to the "holdover" more than once. In answer to appellant's objection, the court said: "It's proper impeachment. You opened the door, Counselor. * * * once you open the door the State has a right to impeach him."

It is the established rule that a witness' credibility may not be attacked by showing a mere arrest, investigation, or criminal charge which did not result in a conviction. State v. Sanders, Mo., 360 S.W.2d 722, 725. However, pursuant to § 546.260, RSMo 1969, V.A.M.S., an accused during cross-examination may be questioned as to any matter referred to in his examination in chief, and this is particularly so when the purpose is to show his trustworthiness and credibility as a witness in his own behalf. The answer to appellant's contention is set forth in State v. Withers, Mo., 347 S.W.2d 146. There the defendant testified on direct examination that he had not previously been arrested and had not been in trouble. The State was then permitted over objection, to cross-examine him with respect to prior arrests and criminal charges pending against him, and in ruling the issue this court said:

"When defendant's counsel, on direct examination, asked defendant whether prior or subsequent to August 4, 1958 (the date on which defendant committed the offense here under review) he had *ever been arrested or in any kind of trouble* and defendant said he had not, the trial court concluded, as this court must conclude, that the purpose of the interrogation was to lead the jury to believe that, with the exception of his admitted criminal misconduct of August 4, 1958, defendant, both prior and subsequent thereto, had been a law-abiding person. In so doing, defendant, of his own volition and without limitation as to time or trait of

character involved, placed in issue his good character both prior and subsequent to the admitted lapse thereof on August 4, 1958, and then made himself his sole witness in that behalf.

"We think it clear that under the circumstances here shown defendant subjected himself to cross-examination as to any prior criminal misconduct or arrests for such misconduct for the purpose of testing in good faith, first, whether he truthfully was (as he had sought to induce the jury to believe) a person of good character (and, therefore, in law presumed less likely to commit a crime than a person not of good character) and, second, testing generally his trustworthiness and credibility as a witness in his own behalf. * * * Nothing in the record makes it appear that the State did not in good faith pursue the path opened to it by defendant. The trial court is vested with a large measure of judicial discretion in determining the extent and range of cross-examination under the circumstances here shown. Cases, supra. We cannot say that the trial court abused that discretion in the instant case."

We conclude that the cross-examination of appellant was, under the circumstances of this case, a permissible attempt to impeach his obvious effort to present to the jury a record of previous good conduct.

Appellant next asserts that certain remarks made by the trial court were prejudicial.

During the cross-examination of appellant the court sustained an objection to a question, and when another question was asked of him the record shows that the court said: "Look at the jury there Mr. Defendant." Subsequently, at a conference out of the hearing of the jury, when appellant's counsel apparently sought to make some form of objection concerning the

above remark of the court, although this is not entirely clear, the court stated to appellant's counsel: "You have been [objecting] and you'd better instruct your client not to be giving this Court dirty looks and you'd better instruct this defendant * * * that he conduct himself in a proper manner. In this Court's opinion he is acting very, very hostile as a witness." When the court then stated that he had told appellant to face the jury, appellant's counsel replied: "The way it was said, I wanted to object."

■ The record does not show any attempt by the court to discredit the appellant. At most it indicates an attempt to require proper conduct on his part and to exercise proper control over the conduct of the trial. While the trial court must remain wholly impartial as between parties and should not indicate, directly or indirectly, a belief in the guilt or innocence of an accused, State v. Castino, Mo., 264 S.W.2d 372; State v. Pinkston, Mo., 333 S.W.2d 63, it is also the duty of the court to maintain order and decorum in the courtroom, State v. Montgomery, 363 Mo. 459, 251 S.W.2d 654; State v. Pinkston, supra, and trial courts necessarily must be invested with discretion in such matters. State v. Thursby, Mo., 245 S.W.2d 859; State v. Turner, Mo., 320 S.W.2d 579. The record does not demonstrate an abuse of discretion.

The judgment is affirmed.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

MORGAN, P. J., DONNELLY, J., and HENLEY, Alt. J., concur.

FINCH, J., not sitting.